THIGPEN, Judge,
dissenting.
My review of this record discloses no reversible error in the trial court’s application of the law to the facts in this case. Because I would affirm the trial court’s order evicting Sayles for repeated violations of the terms of the lease agreement, I must respectfully dissent.
It is undisputed that this is not the first time that Sayles has violated the terms of the lease provision regarding utility service. In pertinent part, that provision expressly states: “Failure of Tenant to furnish UNINTERRUPTED service because of non-payment of utilities shall be considered a serious violation of the terms and conditions of this lease.”
In September 1991, when Sayles’s gas service was disconnected for nonpayment, GGHA counselled her and held an informal hearing. GGHA allowed Sayles to remain a tenant, but notified her that if her gas service was disconnected again in the future, it would send her a notice to vacate with no exceptions.
In April 1993, Sayles’s gas service was again disconnected because of nonpayment and GGHA again sent her a notice that it was terminating her lease. Following an informal hearing, GGHA sent Sayles a notice to vacate, noting what it referred to as “a repeated violation.” After a hearing, the district court ordered the eviction, and after a hearing on Sayles’s appeal, the circuit court ordered Sayles evicted.
The facts in this case are not disputed. Sayles’s water heater, apartment heater, and cooking stove were powered by gas, and GGHA maintains that the absence of these essentials creates an unsafe and unclean environment defeating the express purposes of public housing. See 42 U.S.C.A. § 1437. After Sayles was notified that the lease was being terminated because she had again violated the terms of the lease concerning utility services, but before the date of the informal hearing, Sayles paid the outstanding bill and penalty to have her gas service restored. This information was considered before the decision was made to order her eviction.
*492 My research reveals no cases from Alabama or any other jurisdiction that specifically address the issue whether the repeated, short-term disconnection of a utility service is considered to be a material violation of the terms of the lease, or is good cause to support an eviction action. Moreover, I find no authority prohibiting a public housing authority from instituting eviction proceedings due to interrupted utility service because of nonpayment. Certainly the safety and well-being of other tenants in public housing are enhanced by each tenant’s proper maintenance of his or her facility, including uninterrupted utility service. Furthermore, although the ore tenus rule does not apply in this case, it is noteworthy to me that both the circuit court and the district court received testimony at hearings in this case, and each court ordered eviction. I have carefully and thoroughly reviewed the transcript of the testimony presented to the circuit court, and I find that the circuit court properly applied the law to the facts presented.
GGHA is the government agency that administers public housing in the Gadsden area, and pursuant to policy, GGHA is vested with “the maximum amount of responsibility in the administration of their housing programs.” 42 U.S.C. § 1437. As such, GGHA is empowered to make and enforce public housing lease agreements in its program. This court should not undermine the responsibility of GGHA in administering the public housing program. The majority seems to focus on the fact that no property damage or injury to another resident resulted from Sayles’s repeated violations. There is no requirement that damage or injury must first occur to find that Sayles seriously and repeatedly violated material terms of the lease. For this court to add that requirement not only removes management supervision from GGHA, but also frustrates GGHA’s purpose to prevent damage or injury in its administration.
While I am not unsympathetic with Sayles’s predicament, I have many concerns with the rationale of the majority opinion. The majority reasoning seems to be that because Sayles’s monthly income, which was totally from government assistance, was insufficient to cover her expenses, the terms in the lease regarding nonpayment are not binding on Sayles, or, if she violates those provisions, she should be forgiven.
It is noteworthy to me that despite her apparent shortage of funds, Sayles was able to pay approximately $100 within days after her gas service was disconnected in order to resume the utility service before the hearing. That amount represented an accumulated balance for past due bills and a reconnection fee of $40. After being noticed that she was again in violation of the lease agreement, Sayles was able to again quickly remedy the situation. Sayles’s own testimony was that her gas bill was lower in summer months, and that during the winter months, it averaged $50 to $58. When questioned regarding the accumulated carry-over balance of $104, she responded that as long as she paid something towards it, the gas was not cut off, but that in April 1993, she did not pay anything and service was disconnected. Furthermore, it appears from Sayles’s explanation that the shortage of her utility allowance that month was due to GGHA’s withholding $14 to pay for a broken window. The record contains no evidence regarding that incident, nor an explanation regarding Sayles’s liability for such. It is also noteworthy to me that Sayles testified that during the snow storm in March, she used an electric heater, and that she does not pay the electric bill. Regardless of the housing director’s unfamiliarity with a federal regulation regarding hardship for excessive utility bills, there is an on-record discussion regarding that regulation, which the trial court considered with the facts of this case. The undisputed facts in this case indicate nothing to entitle Sayles to the relief offered by that regulation.
I am aware that my position in this matter would render a harsh result; however, it is my opinion that the rationale employed by the majority fails to consider the authority given to those administering public housing. Furthermore, it is my opinion that the majority gives insufficient recognition to GGHA’s administrative expertise in the area of public housing, which is a specific, specialized area. See Shell Offshore, Inc. v. Baldwin County *493 Commission, 570 So.2d 698 (Ala.Civ.App. 1990).